**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Northern Division**

| | |
|---|---|
| SARAFINA SHIPPING COMPANY LTD,<br><br>                    Plaintiff,<br>         v.<br><br>UNION BULK A.S.,<br><br>                    Defendant. | Case No.<br><br><br>**IN ADMIRALTY** |

## <u>VERIFIED COMPLAINT</u>

Plaintiff Sarafina Shipping Company Ltd. ("<u>Sarafina</u>" or "<u>Plaintiff</u>"), by and through its attorneys, Blank Rome LLP, brings this action pursuant to Rule 9(h) of the Federal Rules of Civil Procedure and Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("<u>Rule B</u>") against Defendant Union Bulk A.S. ("<u>Union Bulk</u>" or "<u>Defendant</u>"), requesting issuance of process of maritime attachment, including against Garnishee Smith Industries, Inc. ("<u>Smith</u>" or "<u>Garnishee</u>"), and alleges upon information and belief as follows:

## <u>JURISDICTION AND VENUE</u>

1.      This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure because it involves claims for breach of a maritime contract and indemnity arising out of a charter party between Plaintiff and Defendant. This Court has admiralty jurisdiction pursuant to 28 U.S.C. § 1333 and Rule B. This action is brought to obtain security for an arbitration recently commenced in London, and pursuant to 9 U.S.C. § 201 *et. seq.*

1

2. Venue is proper in this District because Defendant's property is located within this District.

**THE PARTIES**

3. Plaintiff is, and was at all relevant times, a foreign corporation duly organized and existing under the laws of the Bahamas.

4. Plaintiff is, and was at all relevant times, the owner of the bulk carrier vessel M/V CS SARAFINA (IMO: 9635468) (the "Vessel").

5. Upon information and belief, at all material times, Defendant Union Bulk was a foreign corporation or other business entity organized and existing under foreign law with a registered office at Strandvejen 169-171, 1st floor, 2900 Hellerup, Denmark.

6. Defendant was at all relevant times the charterer of the Vessel pursuant to a charterparty dated August 26, 2025.

7. Upon information and belief, Defendant cannot be found in this District within the meaning of Rule B and LAR(b)(1). *See* Declaration of Noe S. Hamra, dated July 17, 2026 (the "Hamra Declaration") ¶¶ 5-9, attached hereto as **Exhibit A** and incorporated herein by reference.

8. Upon information and belief, Smith is a corporation duly organized under the laws of Maryland with its principal office at 2001 Kenilworth Ave., Capital Heights, MD 20743.

9. Plaintiff reasonably believes Smith has possession, custody, or control of property of the Defendant, namely payment for freight due and owing to Defendant for the carriage of scrap by the LUCILIA C from Baltimore to Turkey.

## FACTUAL BACKGROUND

10.  Plaintiff, as owners, chartered the Vessel to Defendant under the terms of a charterparty, as evidenced by a fixture recap dated 26 August 2025 (the "Charter").

11.  On November 12, 2025, the Vessel was berthed at Terminal 3TCG, Berth No. 3B, Luanda, Angola (the "Berth") pursuant to Defendant's instructions and nomination. From the moment the Vessel was berthed, it became immediately apparent that the berth nominated by Defendant was unsafe.

12.  In particular, due to the short length of the berth, the Vessel's bow was 20 meters ahead of the designated berth limit, causing instability to the Vessel and leaving it exposed to the weather conditions.

13.  The Master of the Vessel immediately issued a Letter of Protest dated November 12, 2025, reporting the inadequate berth length, the Vessel's continuous surging, and the fact that mooring ropes were parting under excessive strain.

14.  On November 13, 2025, the Master issued a second Letter of Protest reporting that five mooring ropes had parted due to the unsafe conditions. Later the same day, a third Letter of Protest was issued reporting that all mooring ropes had parted, and that despite repeated attempts to contact Port Control and the Pilot to request tug assistance, no assistance was provided.

15.  During this period, and as a direct result of the unsafe berth and continuous surging, the Vessel's stern made contact with the concrete jetty (the "Incident").

16.  Plaintiff, through its P&I Club, invited Defendant to attend a joint survey of the damage, but Defendant declined to participate.

17. The attending surveyor observed damage to the port side hull structure in the engine room area, together with approximately 12 dents caused by the Vessel striking the concrete quay. The surveyor recorded in total 13 structural damages and 12 parted mooring ropes on the jetty. The survey report provides: "[i]t was also observed the vessel length bigger than the jetty, showing about 20 meters of difference, the jetty length about 159.9 meters, sufficiently enough for the vessel unsafe berth." The surveyor expressly characterizes the length discrepancy as sufficient to render the Berth unsafe.

18. Following redelivery, Plaintiff arranged permanent repairs at Varuna, Dakar, that were completed on May 17, 2026. During these repairs, a more detailed inspection was undertaken. The Class Surveyor identified a sub-surface crack attributable to the Incident, requiring additional steelwork repairs.

19. Due to Defendant's breach of the safe berth warranty as articulated at lines 19-20 and lines 23-25 of the Charter, Plaintiff has incurred damages in the amount of USD 445,319.

20. This action is expressly filed pursuant to the Federal Arbitration Act, 9 U.S.C. § 8, without prejudice to arbitrating the merits of this dispute in London.

## COUNT I: BREACH OF CONTRACT

21. Plaintiff repeats and realleges paragraphs 1-20 as if fully set forth herein.

22. At all relevant times, Plaintiff and Defendant were parties to the Charter.

23. Upon information and belief, Defendant breached the Charter by nominating an unsafe berth.

24. As a direct and proximate result of Defendant's breach, Plaintiff has suffered damages in the amount of at least $445,319.

## COUNT II: REQUEST FOR ORDER OF MARITIME ATTACHMENT

25. Plaintiff repeats and realleges paragraphs 1-24 as if fully set forth herein.

4

26.     Plaintiff seeks issuance of Process of Maritime Attachment and Garnishment in order to obtain security for claims against Defendant in connection with damage and subsequent repairs to the Vessel.

27.     No security for Plaintiff's claims has been posted by Defendant, or anyone acting on its behalf, to date.

28.     Based upon information and belief, Union Bulk is currently operating as time charterer of the vessel LUCILIA C. It is also believed that Union Bulk has sub-chartered the LUCILIA C to Garnishee located in Sparrows Point, Maryland on a voyage basis, for the carriage of scrap from Baltimore to Turkey.

29.     Based upon information and belief, the LUCILIA C called at Sparrow's Point, Maryland, on or around July 12, 2026 to load Smith's cargo and, upon information and belief, remains in port as of the date of this filing.

30.     Upon information and belief, and after investigation, Defendant cannot be "found" within this District for purposes of Rule B and LAR(b)(1), *see* Hamra Decl. ¶¶ 5-9, but Defendant has, or will during the pendency of this action have, assets within this District comprising, inter alia, goods, chattels, credits, debts, effects and monies, funds, accounts, letters of credit, or other tangible or intangible property which belong to it, are claimed by it, are being held for it or on its behalf, are due to it, or are being transferred for its benefit, within this jurisdiction. *See id.* ¶¶ 10-16.

31.     Specifically, based upon industry custom and practice, a charterer under a time charter party is responsible to pay for bunkers for the vessel during the pendency of the time charter.

32. As such, the bunkers onboard the LUCILIA C constitute property and/or assets of the Defendant in the district within the meaning of Rule B.

33. Moreover, as the voyage charterer of the LUCILIA C, Smith will soon owe Defendant freight for the carriage of the scrap to Turkey. Once that freight is due and owing, it is the property of Defendant Union Bulk in the district, and subject to maritime attachment pursuant to Supplemental Rule B.

34. Although not a requirement for a Rule B attachment, upon information and belief, Union Bulk is winding down its business operations at the end of 2026. This is believed to be one of its final charters.

35. The Charter provides for London arbitration of disputes arising thereunder, and this action has been filed in accordance with Rule B to obtain *quasi in rem* jurisdiction over Defendant and to secure Plaintiff's claims.

36. The total amount of Defendant's property to be attached is $623,447, consisting of $445,319 for the principal claim, $100,000 for English attorneys' fees, and $78,128 for interest.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays as follows:

    (i) That process in due form of law issue against Defendant, citing it to appear and answer under oath all and singular the matters alleged in the Verified Complaint;

    (ii) That since Defendant cannot be found within the District pursuant to Rule B, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B attaching Defendant's goods, chattels, credits, bills of lading, debts, effects and monies, funds, accounts, letters of credit, or other tangible or intangible property which belong to it, are claimed by it, are being held for it or on its behalf, or which are being transferred for its benefit, within this District in an amount sufficient to secure Plaintiff's claims, and that all persons claiming an interest in the property attached be cited

6

to appear and, pursuant to Rule B, answer the matters alleged in the Verified Complaint;

(iii) That this Court enter an order appointing a special process server pursuant to Rule 4(c)(3) of the Federal Rules of Civil Procedure and Rule B and authorizing service electronically and by personal service of the Process of Maritime Attachment and Garnishment on Smith, or by any other means accepted by Smith;

(iv) That the Court grant Plaintiff leave to serve any additional garnishee(s) who may, upon information and belief obtained in the course of this action, be holding, or believed to be holding, property of the Defendant within this District;

(v) That the Court enter an order for any process that is served on a garnishee to be deemed effective and continuous service throughout the remainder of the day upon which service is made commencing from the time of such service; and such service to be further deemed effective through the end of the next business day, provided that another service is made that day, and to authorize service of process via facsimile or e-mail following initial personal service;

(vi) That, following attachment, this matter be stayed pending arbitration in London, and that this Court retain jurisdiction over this matter through the entry of a final judgment or award associated with the claims including appeals thereof; and

(vii) That the Court grant any other relief in favor of Plaintiff that it deems just and proper under the circumstances.

Dated: July 17, 2026

Respectfully submitted,

**BLANK ROME LLP**

 */s/ Luke M. Reid*

Luke M. Reid (Bar No. 31228)
Luke.Reid@blankrome.com
125 High Street, 3rd Floor
Boston, MA 02110
617-415-1200

William R. Bennett, III*
William.Bennett@blankrome.com*
Noe S. Hamra*
Noe.Hamra@blankrome.com
Carmella R. O'Hanlon
Carmella.Ohanlon@blankrome.com
1271 Avenue of the Americas
New York, NY 10020
212-885-5000

*Attorneys for Sarafina Shipping Company Ltd.*

*\* Admission pro hac vice to be filed*

8

**ATTORNEY VERIFICATION**

Pursuant to 28 U.S.C. § 1746, Noe S. Hamra, declares and states:

1.      I am a partner with the law firm Blank Rome LLP, attorneys for Plaintiff in this action. I have read the foregoing Verified Complaint and know the contents thereof, and the same are true to the best of my knowledge, information, and belief.

2.      I am authorized to make this Verification on behalf of Plaintiff.

3.      The sources of my information and the grounds for my belief are communications, information, and documents provided by Plaintiff and/or by representatives or counsel of Plaintiff.

4.      The reason this Verification is made by an attorney and not by Plaintiff is because Plaintiff is a foreign corporation with no officers or directors within this District.

I declare under penalty of perjury that the foregoing is true and correct.


Dated: New York, New York
　　　July 17, 2026

_Noe S. Hamra_
_____
Noe S. Hamra